**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 98-5268 (SDW)(MCA) |
| v. | |
| NCH CORPORATION, et al., | |
| Defendants. | |
| | |
| N.J. DEPARTMENT OF ENVIRONMENTAL PROTECTION, and THE ADMINISTRATOR OF THE N.J. SPILL COMPENSATION FUND, | Civil Action No. 05-881 (SDW)(MCA) |
| | **OPINION** |
| Plaintiffs, | September 10, 2010 |
| v. | |
| HIGGINS DISPOSAL, INC., et al., | |
| Defendants. | |

**WIGENTON,** District Judge.

Before the Court is Third Party Defendant Sun Pipe Line Company Inc.'s ("Sun") application for attorneys' fees and costs (the "Application") pursuant to this Court's June 24, 2009 Order granting Sun's Motion for Summary Judgment on Indemnification from Third Party Defendant Sheehan Pipe Line Construction Company ("Sheehan"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Application is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

## FACTUAL AND PROCEDURAL BACKGROUND

This application arises out of a decade-plus long dispute concerning the correct distribution of clean-up costs for the subsurface water contamination at the Higgins Farm Superfund Site ("Higgins Farm" or the "Site"). The Court will not recite the entire history of the case as the alleged facts have been laid out clearly in the extensive procedural history, but a brief summary is appropriate.

Higgins Farm is a seventy-five (75) acre farm that has been the subject of United States Environmental Protection Agency ("EPA") and New Jersey Department of Environmental Protection ("DEP") regulatory action since the late 1980s. For many years, the Site served as a dump for drums containing, among other things, byproducts of chemical manufacturing and toxic waste. Neither Sun nor Sheehan dispute that the estimated amounts of EPA and DEP's past and future cleanup costs could exceed thirty-six (36) million dollars.[1]

In 1998, the EPA commenced an action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA") with respect to Higgins Farm. The EPA named Lisbeth Higgins, the Site owner, and Third-Party Plaintiffs FMC Corporation ("FMC") and NCH Corporation ("NCH") as defendants and alleged that they were potentially responsible parties based upon their alleged disposal of hazardous waste at the Site. In June 2000, FMC and NCH filed third party actions against various parties, including Sheehan and Sun. Specifically, FMC and NCH alleged that a puncture in Sun's pipeline by a backhoe in 1956 contributed to the subsurface water contamination at Higgins Farm. The claims against Sheehan and Sun did not include CERCLA counts, but rather were framed under the

---

[1] The parties, however, do disagree on the maximum potential liability risk to Sun and Sheehan and whether they were jointly and/or severally liable for the ultimate cleanup costs. (*See* Sheehan's Mem. in Opp. to Sun's Mot. for Fees 8-10 ("Sheehan Opp. Mem."); Sun's Reply Mem. in Supp. of Fees 5-7 ("Sun Reply").)

New Jersey Spill Compensation and Control Act.  N.J. STAT. ANN. § 58:10-23.11. ("Spill Act").
NCH further asserted a tort claim against them.

On October 31, 2008, Sun filed for summary judgment on its cross-claims against
Sheehan for indemnification pursuant to the 1956 contract between Sun and Sheehan under
which Sheehan installed a fourteen (14) inch pipeline for Sun.  In its June 24, 2009 Order, this
Court, among other things, granted Sun's motion for summary judgment on its contractual
indemnity claim against Sheehan and ordered that Sheehan pay Sun its attorneys' fees and costs
pursuant to the indemnity agreement.  The Court left it to the parties to "negotiate and agree on a
reasonable sum" for Sun's fees and also made itself available to assist, if necessary.  (June 24,
2009 Order.)[2]

Ultimately, the parties failed to reach an agreement on the amount of fees and costs.
Pursuant to Local Civil Rule 54.2 and as authorized by this Court's December 17, 2009 and
January 25, 2010 Orders, Sun submitted a detailed affidavit by Sun's lead counsel Harold L.
Segall, with accompanying exhibits, setting forth the fees and costs it sought from Sheehan
pursuant to the indemnity agreement (the "Affidavit").   Sun seeks a total of $3,399,449 in
addition to the reasonable costs associated with its current application for attorneys' fees and
costs.  Sheehan opposes the fee petition and asks for a substantial reduction[3] based upon alleged
inefficiencies in Sun's billing practices and what it claims are unreasonable charges.

## DISCUSSION

"Attorneys' fees and expenses may be awarded to a prevailing party in a federal litigation
where authorized by statute, court rule or contract."  *Apple Corps. Ltd. v. Int'l Collectors Soc'y*,

---

[2] The Court also asked for periodic updates on the status of the settlement negotiations and, on more than one occasion, extended the parties' deadlines to come to an agreement.

[3] Sheehan repeatedly asks that this Court "substantially reduce" Sun's fee request; however, Sheehan neglects to provide the exact reduction it feels would be appropriate.  (*See* Sheehan Opp. Mem. 1. 31.)

25 F. Supp. 2d 480, 484 (D.N.J. 1998). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The product of this calculation is called the lodestar," *Apple Corps.*, 25 F. Supp. 2d at 484, and it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433; *see also Washington v. Phila. County Ct. of Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996) ("The lodestar is strongly presumed to yield a reasonable fee."). However, the lodestar calculation requires that the court "'carefully and critically' evaluate the hours and the hourly rate put forth by counsel." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998) (citations omitted).

The party seeking attorneys' fees has the burden of establishing the reasonableness of the fees by "submit[ting] evidence supporting the hours worked and rates claimed."[4] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotations omitted) (citing *Hensley*, 461 U.S. at 433). In other words, Sun's counsel must "produce satisfactory evidence -- in addition to [their] own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). In this case, Sun's fee application request is supported in great detail by the Affidavit of Harold L. Segall, Esq., in which the hours and tasks of the attorneys, paralegals and support staff who worked on the matter are set forth. The amount of fees sought by Sun can be calculated by multiplying the hours submitted for each

---

[4] In addition, L. Civ. R. 54.2(a) requires that the fee applicant submit an affidavit detailing: "(1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered; (2) a record of the dates of services rendered; (3) a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience; (4) the time spent in the rendering of each of such services; and (5) the normal billing rate for each of said persons for the type of work performed."

professional by the rate listed for the respective professional.  The product of these numbers yields a total figure of $2,944,160.63.  Additionally, B&D provided a courtesy discount to Sun in the amount of $50,908.87.  Thus, Sun seeks a total of $2,893,251.76 for the fee portion of its claim, not including the fees it will seek for work done on the pending fee request.

Once the applicant has produced satisfactory evidence, the burden shifts to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended."  *Apple Corps.*, 25 F. Supp. 2d at 485.  "If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the court has wide discretion to adjust the attorneys' fee."  *Id.* (internal quotations omitted).

I.      **The Lodestar**

The first step in calculating the lodestar is determining whether the number of hours expended was reasonable.  Any "hours that were not reasonably expended" must be excluded from the fee calculation.  *Hensley*, 461 U.S. at 434 (internal quotations omitted).  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  *Rode*, 892 F.2d at 1183.  After the Court determines whether the hours expended were reasonable, it must then assess the hourly rate charged for that work.  A "reasonable hourly rate is calculated according to the prevailing market rates in the community."  *Washington*, 89 F.3d at 1035.  "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive."  *Pub. Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

Once the lodestar has been computed, the "court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained."  *Rode*, 892 F.2d at 1183.  A court may not, however, decrease a fee award based on factors that were not raised at all by the opposing party.  *Id.*  To that end, Sheehan does not challenge the reasonableness of the hourly rates

claimed by Sun[5] and therefore, the Court need only consider whether the number of hours expended by B&D was reasonable.[6]  *See id*.

## II.     Reasonableness of hours

Sun seeks attorneys' fees for a total of 10,044 hours worked by B&D professionals. Sheehan challenges the reasonableness of those hours on several grounds.  First, Sheehan provides twelve examples of what it alleges are specific billing abuses committed by B&D.[7] Second, Sheehan challenges B&D's use of "Block Billing".  Finally, Sheehan argues that B&D's fees should be reduced because they were billed in increments of .25 hours instead of what it believes to be the industry standard of .1 increments.

The "district court has a great deal of discretion to adjust the fee award in light of those objections."  *Rode*, 892 F.2d at 1183; *see also Bell v. United Princeton Prop., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) (noting that "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires").  The Court addresses each of Sheehan's arguments below.

### a.  Sun's Specific Challenges and Block Billing

Among other things, Sheehan points to twelve specific instances in which it contends that Sun's attorney hours are too high.  Those examples are: 1.) Sun's Motion to Dismiss Third Party Claims; 2.) Sun's Motion to Dismiss Cross Claims; 3.) Sun's *Pro Hac Vice* Applications; 4.)

---

[5] Sun seeks compensation at 2009 rates for all time worked on this case since 2000.  This is the law in the Third Circuit (*See Lanni v. N.J.*, 259 F.3d 146, 150 (3d Cir. 2001) ("'To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed.'") (quoting *Rendine v. Pantzer*, 141 N.J. 292, 337 (N.J. 1995)).

[6] Sheehan never challenges the specific hourly rates charged by Sun's counsel's - Beveridge & Diamond, P.C.'s ("B&D") - professionals.  Sheehan, however, does challenge the hourly rate insomuch as they argue that B&D failed to properly allocate work amongst its paralegals, associates and partners.  Nevertheless, this Court construes those challenges as better subsumed within the reasonableness of hours analysis.  *See infra* Section II., c.

[7] Sheehan argues that the examples provided "are merely illustrative and by no means exhaustive of the billing abuses by B&D."  (Sheehan Opp. Mem. 15.)  However, a court is precluded from decreasing a fee award based on factors that were not raised by the opposing party and thus this Court deems any other specific examples waived. *Rode*, 892 F.2d at 1183.

Sun's Motion for Limited Discovery; 5.) Sun's Motion to Strike Expert Report of Dale Jensen; 6.) Sun's Motion to Bifurcate; 7.) Sun's Motion for Indemnification from Sheehan; 8.) Spill Action Motion Drafted and Filed by Sheehan; 9.) Sun's Preparing for and Taking Deposition of Frank Rovers; 10.) Sun's Preparing for and Defending Deposition of Kathryn Johnson; 11.) Sun's Preparing for and Defending Deposition of Thomas Gillespie; and 12.) Sun's General Deposition Preparation.  Sheehan alleges that B&D professionals spent a total of 2,415.25 hours on the twelve challenged examples.  However, in its Reply to Sheehan's Opposition, Sun argues that they only worked 1,722 hours on those very same tasks.  (*See* Sun Reply 10-19; Sun Suppl. Aff. in Supp. of Fees ¶¶ 19-67 ("Sun Suppl. Aff.").)  As will be explained infra, this discrepancy is due in large part to B&D's use of block billing and is a significant reason for the fee dispute in the first place.

"Block billing is a time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks." *Brown v. City of Pittsburgh*, No. 06-393, 2010 WL 2207935, at *8 n.12 (W.D. Pa. May 27, 2010) (quoting *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007)).  In this Circuit, "[b]lock billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task" and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed.  *United States of America ex rel. Doe v. Pa. Blue Shield*, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999).  While a substantial number of vague entries may be a reason to exclude hours, it is not a reason to exclude the entire entry.  This Court believes the more appropriate approach would be to look at the entire block, comparing the listed activities and the time spent, and determining whether the hours reasonably correlate to all of the activities performed.

In *Rode v. Dellarciprete,* 892 F.2d 1177 (3d. Cir. 1990), the Court of Appeals addressed the proper degree of specificity required of a party seeking attorneys' fees, and stated that specificity should only be required to the extent necessary for the court "to determine if the hours claimed are unreasonable for the work performed." *Id.* at 1190. "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* (citing *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).

When looking at the time entries for tasks not specifically challenged by Sheehan, B&D's fees seem reasonable. The entries for each attorney from B&D on each day are sufficiently specific for this Court to make a determination as to the reasonableness of the tasks themselves and, in the majority of the cases, the time allotted for each task. While individual, line item billing records are always preferred by a court forced to evaluate the time expended in determining an appropriate fee award, the total amount of time attributed to these block activities in this instance does not strike this Court as unreasonable or inconsistent with the time one would expect to expend on the activities described in those entries. Thus, while not necessarily ideal, B&D's time entries do not suggest that anything is amiss.[8] The block billings all describe necessary tasks in this case, performed on a given date. Hence, given this Court's background and experience, Sheehan's general challenge to the block-style billing employed by Sun's counsel in this litigation is rejected. *See Brown*, 2010 WL 2207935, at *9 (overruling the defendant's general objection based on block billing after finding that billing entries were sufficiently specific).

---

[8] In light of the extremely detailed affidavits and exhibits submitted by Sun, including B&D's time entries, this Court is generally less skeptical than Sheehan's counsel appears to be about the billing records Sun presents in its fee petition and supporting exhibits for days when multiple tasks in this case were performed and the time combined into one total for the day.

As applied to the specific challenges raised by Sheehan, however, this Court finds problems with B&D's block billing method. As stated above, there are significant discrepancies between the amount of time the parties believe B&D professionals spent on the twelve challenged examples. This confusion arises from B&D's failure to task bill because the parties now have to estimate, after the fact, how much time was spent on a particular task within a block billing description. Whereas Sheehan apportions most, if not all, of the time listed in a block billed time entry to the specific task it is challenging, Sun's lead counsel, Mr. Segall, has submitted a Supplementary Affidavit, with exhibits, breaking down the entries and allotting time in a much more favorable light. Unfortunately, neither method is accurate.

The use of Sheehan's method is misleading and would result in inflated hours. Specifically, Sheehan's proposed calculations would result in the same disputed time being apportioned to multiple tasks because in calculating the hours for a given task, Sheehan included other tasks appearing in that day's time entry. (*See* Sheehan Opp. 24 n.33.) For example, in its Opposition, Sheehan claims that B&D spent 17.5 billable hours preparing *pro hac vice* applications in August 2000. (*Id.* 17.) Included in that time is 11.25 hours spent by Kathleen Lennon, a former environmental litigation associate at B&D, on August 1, 2000, "prepar[ing] pro hac vice motions." (*See* Sun's Suppl. Aff., Ex. 4.) However, Ms. Lennon's time entry description for those 11.25 hours also includes "research and preparation of motion to dismiss" and a "telephone conference with H. Segall." (*Id.*) Those same hours could have been – and probably were – utilized by Sheehan in its calculation of the amount of time B&D lawyers spent on Sun's August 2000 Motion to Dismiss Third Party claims, which Sheehan also challenges. This double billing/counting is not a reliable method to challenge Sun's fee request.

Sun's Supplemental Affidavit fairs no better.[9]  In his Supplemental Affidavit, Mr. Segall would have the Court believe that he is able to review ten year old B&D invoices and calculate the exact amount of time spent on any task, on any day, by any B&D professional, based upon his eighteen years of experience as a billing attorney.  (*See* Sun's Suppl. Aff. ¶ 6.)  Despite this Court's faith in Mr. Segall's qualifications and expertise, it would be virtually impossible for any person to recall, based on memory alone, the exact amount of time another professional spent on a specific task over ten years ago – at least with sufficient accuracy to satisfy this Court.[10]

At the end of the day, however, both Sun and Sheehan's inability to correctly identify time entries stems directly from B&D's failure to task bill.  Courts within this Circuit have held that a party "block bills at his own peril."  *See Estate of Schultz v. Potter*, No. 05-1169, 2010 WL 883710, at *7 n.14 (W.D. Pa. Mar. 5, 2010).  This Court agrees and holds that when there is confusion due to block billing, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion by task billing.  As explained above, the Court does not expect minute by minute entries by counsel.  However, the significant amount of "block billing" employed by B&D, in this instance, thwarts the Court in the performance of its review obligations and does not reasonably meet Sun's obligation to provide "some fairly definite information as to the hours devoted to various general activities" and by whom.  *Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992).  The Court will now look at the twelve challenged examples listed by Sheehan and, where necessary, reduce the fee amount sought by an appropriate percentage in response to the impediments caused by B&D's use of block billing.

---

[9] Shortsightedly, Sun criticizes Sheehan's Opposition papers for misrepresenting the fees Sun seeks and failing to accurately calculate the hours spent by B&D professionals on specific tasks.  Significantly, however, much of the information that Sun has provided to clarify the amount of time billed for specific tasks (such as which professional's time was excluded as a discount to Sun or Sheehan) was not provided until Sun filed its Supplemental Affidavit.

[10] If Sun has notes or other documentation which prove the specific amount of time each B&D individual spent completing specific tasks, they should have been attached to Sun's fee request.

### i.  *Sun's Motion to Dismiss Third Party Claims*

Sheehan opposes fees for work done relating to Sun's October 2, 2000 Motion to Dismiss.  In its Motion to Dismiss, Sun sought dismissal of FMC and NCH's contribution claims on the grounds that 1.) FMC and NCH had not engaged in the clean up and thus couldn't recover costs under the Spill Act; 2.) FMC and NCH were not responsible for the same injury as Sun; and 3.) FMC and NCH's claims did not meet the pleading requirements of Rule 14.  The papers submitted by Sun in support of its motion included an 11-page moving brief and a 16-page reply. Ultimately, the motion was denied.

According to Sheehan's calculations, Sun billed 294 hours for this motion.  (*See* Sheehan Opp. 16.)  Sheehan then uses a blended rate of $360 per hour (partner rate of $445 per hour and associate rate of $275 per hour) to calculate that Sun seeks to recover $105,840.00 ($360 x 294 hours) for time spent on this motion.  As is the case with respect to all of Sheehan's challenges, Sun disagrees with Sheehan's figures.  Sun asserts that B&D spent 280 hours on the motion. (*See* Sun Reply 10.)  Furthermore, Sun does not use a blended rate to determine the final cost. Instead, as explained above, Mr. Segall estimates the precise amount of time spent on the motion by each professional and calculates the overall fee by using their respective 2009 billing rates.[11] Consequently, Sun claims that B&D's invoices reflect fees in the amount of $89,070 for its work on the Motion to Dismiss.  Using either calculation, this Court agrees with Sheehan; the amount of time spent by B&D professionals on this relatively non-complex motion was excessive.  The excessiveness is illustrated, in part, by Sun's straightforward and concise 11-page moving brief. Thus, Sun's fees sought for this motion will be reduced by 20%.

---

[11] B&D's 2009 rates for Partners, Associates, Paralegals and Paralegal Assistants were $445.00, $275.00, $166.50 and $117.00 per hour, respectively.

Because B&D block billed, there is no way for this Court to segregate the exact amount of time spent on the Motion to Dismiss from other services listed in those block billing entries. Consequently, as will be the case in all of the examples successfully challenged by Sheehan, the Court will split the difference between the parties' respective estimation of Sun's fees.  For the Motion to Dismiss, that number equals $97,455.00 and a 20% fee reduction would amount to $19,491.00.

### ii.   Sun's Motion to Dismiss Cross Claims

Sheehan also opposes fees for B&D's work done relating to Sun's Motion to Dismiss Cross Claims by Third-Party Defendant Firmenich ("Firmenich").  In support of its Opposition, Sheehan claims that B&D spent 66 hours researching and preparing an uncomplicated motion that included a 9-page brief – which was ultimately denied.  (*See* Sheehan Opp. 16-17.)  Even if this Court agreed with Sheehan's calculation of the time spent on this Motion, this Court disagrees that the time billed was excessive.[12]  First, based upon this Court's experience, the time in and of itself seems reasonable.  Secondly, though the Motion was denied, Firmenich stipulated that if Sun prevailed against FMC and NCH, it would dismiss its claims against Sun. Consequently this Court will not grant Sheehan's request for a deduction.

### iii.   Sun's Pro Hac Vice Applications

Sheehan next seeks reduction for fees relating to B&D's preparation of *pro hac vice* applications for Harold Segall, Justin Savage and James Parkinson in August of 2000 and April of 2005.  Sheehan claims that B&D spent 28.75 hours on these applications for a total fee amount of $10,350.00.  (*See* Sheehan Opp. 17.)  Sun counters that it only spent a total of 10 billable hours and that its fees amount to only $2,877.50.  This difference is rather staggering and is indicative of the problems caused by block billing.  In fact, the Court is particularly troubled

---

[12] Sun claims that it only spent 48.5 hours on the motion.  (*See* Sun Reply 11.)

by this instance of block billing by B&D.  Not only is the amount of time sought excessive, but the number of days spent on the applications is unwarranted as well.  For example, for Sun's August 2000 *pro hac vice* applications, B&D professionals worked on the applications for at least six (6) consecutive business days spanning both the months of July and August.  (*See* Sun Suppl. Aff., Ex. 4.)  Additionally, Sun's April 2005 *pro hac vice* applications were worked on for three (3) consecutive business days even though, presumably, there should have been saved drafts in an electronic database from Sun's earlier filings.  (*See id.*)  It should not take a firm as sophisticated as B&D nine (9) business days to create and finalize *pro hac vice* applications. The Court realizes that some of this time was discounted; however, the fact that it was entered by B&D and billed to Sun in the first place is problematic.  Two specific entries in which R. Pomeroy[13] spent the same amount of time completing what looks to be the same tasks, on back to back days,[14] is particularly disconcerting.  (*See id.*)  Though Sun claims those fees were eventually discounted, this Court believes they indicate the excessiveness of B&D's billing practices in this instance.  Consequently, the Court will eliminate the fees sought by Sun for the *pro hac vice* applications in their entirety.  *See Employers Ins. Co. of Wausau v. Harleysville Inc.*, No. 05-4900, 2008 WL 5046838, at *2-3 (D.N.J. Nov. 20, 2008) (significantly reducing hours billed for filing a *pro hac vice* motion).  While the court in *Harleysville* did not completely disallow time billed for filing *pro hac vice* motions, it reduced the time in half.  The Court reasoned that because these types of motions did not involve the filing of a legal brief or legal research, and are generally standard form motions, 4.1 hours for one motion was excessive.  *Id*. The court further noted that such motions are normally saved on a firm's computers and updated

---

[13] None of the parties' supporting documentation provided R. Pomeroy's first name.
[14] April 19, 2005 and April 20, 2005.

as necessary.  *Id*.  Here, once the Court splits the difference between the parties, the amount of fees that will be eliminated is $6,613.75.

### iv.  *Sun's Motion for Limited Discovery*

Sheehan opposes fees relating to Sun's Motion for Limited Discovery.  Sheehan argues that the hours spent on the motion (174) and total fees claimed ($62,640.00) were excessive in light of the simplicity of the issues.  Sun, on the other hand, claims that it spent only 128.25 hours on the motion for attorneys' fees totaling $38,626.25.  After the Court's review of the hours spent by B&D professionals, the Court does not find that Sun's fees for this motion were excessive and no reduction will be imposed.  Of particular note is the fact that Sheehan joined Sun's Motion and that the motion was successful – FMC and NCH were required to supplement their prior document productions.  *See Hensley*, 461 U.S. at 434-36 (holding that the "degree of success" or the "results obtained" should be adequately accounted for in the lodestar).

### v.  *Sun's Motion to Strike Jensen Expert Report*

On October 9, 2007, Sun filed a motion to strike the expert report of Dale Jensen.[15] Sheehan argues that fees relating to this motion are excessive in light of Sun's alleged failure to confer with Sheehan before filing the motion – in breach of the Joint Defense Agreement between Sun, Sheehan and the other third-party defenses – and Sun's violation of Local Civil Rule 37.1(b) which requires Court permission and conference between the opposing parties' in an attempt to solve their dispute.  In its defense, Sun does not challenge its alleged violation of L. Civ. R. 37.1, but instead argues that it "agreed to withdraw the motion only in exchange for a valuable discovery stipulation [from FMC and NCH] . . . ."  (*See* Sun Suppl. Aff. ¶ 34.)  Sun's rebuttal fails.  L. Civ. R. 37.1(b) was intended to discourage this very type of conduct, where negotiations occur after valuable time and resources (both by the parties and the Court) are

---

[15] Mr. Jensen was an expert for FMC and NCH.

wasted.  Additionally, Sun's failure to seek judicial permission, though ultimately excused by Magistrate Judge Arleo, led to additional filings by Sun and fees incurred by B&D which are reflected on its invoices and they now seek to recoup.  (*See* Sun Corrected Aff., Ex. 8.) Consequently, Sun's requested fees for this motion will be eliminated.

Sheehan claims that B&D spent 150 hours preparing the motion for a total fee amount of $54,000.00.  (*See* Sheehan Opp. 18.)  Sun counters that it only spent a total of 42.50 billable hours and that the fees relating to the motion amount to only $13,302.50.  (*See* Sun Suppl. Aff. ¶ 33.)  When the Court splits the difference, the amount that will be eliminated from Sun's fee petition is $33,651.25.

### vi.  *Sun's Motion for Bifurcation*

Sheehan also opposes Sun's request for fees relating to Sun's preparation of a motion to bifurcate in October 2007.  Once again, Sheehan argues that Sun failed to obtain permission from the Court prior to completing work on its motion.  Ultimately, the Court informed the parties that it would not entertain the motion and Sun's efforts were wasted.  Sun's arguments in defense of its preparation of the motion are unconvincing.  Though Sun might have been able to use *part* of its work product at later stages in the litigation, at the end of the day, Sun was dismissed as a party and the motion was unnecessary.  Consequently, Sun's fees for this motion will be eliminated.  After averaging the amounts claimed by the parties in their Opposition and Reply, the Court will reduce Sun's fee request by $7,631.25.[16]

### vii.  *Sun's Motion for Indemnification*

Next Sheehan opposes Sun's fee request relating to Sun's successful motion for indemnification from Sheehan.  Sheehan argues that the motion did not involve complex legal

---

[16] Sheehan claims that B&D spent 26.5 hours preparing the motion for a total fee amount of $9,540.00.  (*See* Sheehan Opp. 19.)  Sun counters that it only spent a total of 20.50 billable hours and that the fees relating to the motion amount to only $5,722.50.  (*See* Sun Suppl. Aff. ¶ 37.)

issues and did not warrant the 500 hours (give or take)[17] spent on it by Sun.  Though the hours and fees relating to this motion might appear steep at first glance, this Court disagrees that the fees are overly excessive.  Sun's motion was successful and, as a result, Sun was indemnified from millions of dollars in liability and fees.  Given the significance of the stakes, and Sun's ultimate outcome, the fee request is reasonable.  Furthermore, after reviewing Sun's invoices for the motion, the Court believes that Sun was prudent and diligent in its time keeping practices relating to this motion.  Consequently, this Court will not reduce Sun's fee request relating to its Motion for Indemnification.

### viii.  Spill Action Motion Drafted and Filed by Sheehan

Sheehan next claims that "B&D billed 403 hours to a motion that it did not even draft or file."  (See Sheehan Opp. 20.)  This motion was a joint motion by Sheehan and Sun for summary judgment under the Spill Act.  Sun claims that B&D only spent 229.75 hours on the motion.  Once again, the disagreement on the amount of hours spent by B&D on the motion is significant.  After reviewing the invoices, the Court notes that if Sun spent 229.75 hours on the motion, it would not necessarily be excessive, notwithstanding the fact that Sun was not ultimately responsible for the drafting or filing the motion.  Substantial input by Sun could very well warrant the amount of hours Sun claims it spent on the motion.  403 hours, however, is not warranted, and because Mr. Segall did not engage in a contemporaneous review of B&D's invoices, and for the reasons stated in our analysis above, this Court cannot merely take his word for it.

---

[17] Sheehan argues that B&D spent 539 hours ($194,040.00) on the Motion while Sun counters with a total preparation time of 490 hours ($145,842.50).

Consequently, Sun's fee request for this motion will be reduced by 50%.  After the Court averages the fees claimed by the parties, this amount totals $53,744.06.[18]

> ix.   *Sheehan's Remaining Examples*

Sheehan's four remaining challenges fail.  After reviewing the invoices, this Court is satisfied that Sun's remaining fee requests were not excessive and need not be reduced. Specifically, none of Sun's work in preparation for the Frank Rover, Kathryn Johnson or Thomas Gillespie depositions seem unreasonable in light of their importance to Sun's overall defense of this case.  Additionally, though some of Sun's entries relating to its deposition preparations do not identify the deponent who was the subject of the preparation, after reviewing Sun's invoices this Court can still discern the subject of many of the time entries through common sense. Furthermore, in this instance, this Court believes the hours are reasonable notwithstanding Sun's lack of specificity.  *See Rode*, 892 F.2d at 1190 (holding that specificity should only be required to the extent necessary for the court "to determine if the hours claimed are unreasonable for the work performed").

**b.  Billing in .25 Increments**

Sheehan also challenges Sun's method of billing in .25 increments.  Sheehan argues that rounding to the nearest .25 (i.e., 15 minutes), instead of the industry standard .1 (i.e., 6 minutes) has inflated Sun's invoices.  This Court agrees.  As stated by one bankruptcy court in this Circuit, "minimum charges of .10-hour increments more fairly reflect actual time involved, than do quarter hour segments."  *In re Jefsaba, Inc.*, 172 B.R. 786, 801 (Bankr. E.D. Pa. 1994) (quoting *In re Corporacion de Servicios Medico-Hospitalarios de Fajardo, Inc.,* 155 B.R. 1, 2 (Bankr. D.P.R. 1993).  Additionally, in *In re St. Joseph's Hospital*, the Court referred to billing

---

[18] Sheehan claims that the total fee amount claimed by Sun for this motion is $145,080.00.  (*See* Sheehan Opp. 20.) Sun, on the other hand, claims it seeks $69,896.25 for the motion.  (*See* Sun Suppl. Aff. ¶ 44.)

in one-tenth of an hour increments as "normal" and stated that to do otherwise "suggests the opportunity for padding on short tasks."[19]  102 B.R. 416, 418 (Bankr. E.D. Pa. 1989); *see also Williams v. Sullivan*, No. 89-3285, 1991 WL 329581, at *2 (D.N.J. Feb. 7, 1991) (holding that billing in 15 or 30 minute increments was unwarranted and reducing billable hours by 12 percent); *Lopez v. S.F. Unified Sch. Dist.*, 385 F. Supp. 2d 981, 993 (N.D. Cal. 2005) (holding that "billing by the quarter-hour, not by the tenth is a deficient practice because it does not reasonably reflect the number of hours actually worked") (internal citations and quotations omitted); *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1403 (C.D. Cal. 1997) (demonstrating that attorney with $300 hourly rate who works 6 minutes on a matter would charge $30 if he bills by the tenth of an hour and $75 if he bills by the quarter hour); *Preseault v. United States*, 52 Fed.Cl. 667, 680-81 (2002) (reducing fee by 20% and citing cases where fees based on quarter-hour billings were reduced).

We have no reason to discredit Mr. Segall's certification that time spent in increments of less than 15 minutes was not billed.  (*See* Sun Suppl. Aff ¶ 69).  However, there may have been instances where B&D professionals billed 30 minutes for work which actually took 20 minutes. As stated above, this Court believes that billing in increments of .1 leads to a more accurate record of the services performed.  Therefore, without imposing an overly undue or harsh penalty on counsel for its choice in time recording practices, this Court will impose a 12.5% fee reduction to Sun's request, after the deductions related to Sheehan's challenges have already been subtracted.

---

[19] Judge Scholl further stated that billing in increments greater than one-tenth of an hour often causes the court to make an overall downward adjustment to the requested fees. In that particular case, Judge Scholl did not make a downward adjustment notwithstanding the fact that time was billed in quarter hour increments because his other reductions were so substantial.  *Id*.

### c. Allocation of Billable Work Amongst B&D Professionals

Along with the arguments above, Sheehan also argues that B&D failed to appropriately allocate work among its professionals.  Specifically, Sheehan argues that: 1.) B&D partners micromanaged and billed for the same tasks that had already been completed by lower-billing professionals; 2.) associates billed for work that should have been completed by paralegals; and 3.) multiple professionals worked on tasks that could have been completed by one.  This Court disagrees.  Tellingly, in an attempt to provide an example of B&D's overbilling, Sheehan provides a brief overview of the typical use of "pyramid billing" by most law firms (pyramid billing is where hours spent on a matter are distributed in a pyramid structure with the bulk of hours being spent by lower-billing professionals and less billable hours spent by partners). Sheehan then goes on to criticize B&D for not following this model and uses Mr. Segall's 2000 plus billable hours on this litigation as an example.  Significantly, however, Mr. Segall is the only B&D partner Sun seeks compensation for and Mr. Segall's hours accounted for only 22 percent of the total hours for which Sun seeks compensation (2,214 out of 10,044 hours).  (*See* Sun Suppl. Aff., Ex. 6.)  Consequently, Sheehan's arguments based upon its belief that B&D failed to use a "pyramid structure" are unavailing.

Sheehan also attempts to provide other examples of B&D's alleged failure to allocate work properly, including B&D's use of four professionals at document productions by NCH and FMC.  First, Sun fails to challenge (or even list) the total hours/fees accrued by these professionals during those productions.  Secondly, only two of the B&D professionals at the productions were attorneys (associates).  (*See* Sun. Suppl. Aff ¶ 78.)  In light of the significance of the production and the attendance by some partners of the law firms hired by parties in the litigation, including Sheehan, this Court does not find B&D's allocation wasteful.  (*See id.* ¶ 79.)

Consequently, Sheehan's request for a fee reduction based upon a failure of B&D to properly allocate work is denied.

**III.      Proposed Adjustments to Lodestar**

Once the lodestar is calculated, it is presumed to be the reasonable fee. *Blum*, 465 U.S. at 897.  The district court, however, has the discretion to make certain adjustments to the lodestar. *Rode*, 892 F.2d at 1183.   The party seeking adjustment has the burden of proving that an adjustment is necessary. *Id*.

**a.  Doctrine of Laches**

Sheehan asks for an adjustment to the lodestar under the doctrine of laches.  Specifically, Sheehan argues that Sun is barred by the doctrine of laches for not filing its summary judgment motion on the indemnification issue until over a year and a half after the Court gave it permission to do so.  This argument is also unavailing.  Laches contains two essential elements: "(1) inexcusable delay in instituting suit; and (2) prejudice resulting to the defendant from such delay."  *Kepner-Tregoe, Inc. v. Executive Dev., Inc.*, 79 F. Supp. 2d 474, 486 (D.N.J. 1999). Sheehan can prove neither.

Significantly, Sheehan could have resolved the indemnity issue at any time, thus Sun's timing neither "prejudiced" Sheehan nor was an inexcusable delay.  Sheehan was well aware that Sun had an indemnification claim against it and could have accepted its indemnity options at any time during the case in an effort to control Sun's litigation costs and choice of counsel. Additionally, if it was confident in its position and in an effort to mitigate risks, Sun was also free to file its own motion for summary judgment on the indemnity issue after the Court gave it permission to do so.  Simply put, Sheehan's laches argument is without merit.

### b.  Insurance

Finally, Sheehan appears to ask that Sun's fees be offset by any monies paid by Sun's insurance carrier so as to avoid "double recovery."  (*See* Sheehan Opp. 30.)  Sheehan made this same argument in its summary judgment briefing relating to its indemnification dispute with Sun.  However, this Court did not consider and thus implicitly rejected this argument in its June 24, 2009 Order granting Sun's Motion for Summary Judgment.  Furthermore, Sheehan merely asks that the Court keep this "settlement in mind" when "consider[ing]" Sun's fee request.  (*Id.*)  Sheehan fails to ask for any specific relief, and as it did in its Order granting Sun indemnification, this Court will reject Sheehan's argument.

### IV.    Reasonableness of Litigation Costs and Expenses

Sun is also seeking $191,328 in disbursements and $314,869 in expert charges.  Sheehan neither brings any separate challenge to,[20] nor does the Court find any unreasonableness with Sun's request for these expenses.  *See Apple Corps.*, 25 F. Supp. 2d at 497 (awarding expenses as separate and distinct from attorneys' fees calculated under the lodestar).   Thus, these costs will be awarded in full.

### V.    Fees and Costs for Fee Request

Finally, this Court will not award Sun any fees in connection with the preparation of its pending fee request.  This fee dispute is caused, in part, because of confusions arising out of B&D's billing practices.  This Court will not reward any ambiguity associated with B&D's invoices by awarding fees or costs for this application.

---

[20] Sheehan does challenge the fees and costs associated with Sun's billing practices to the extent they are related to the twelve (12) specific challenges above.  The Court, however, addressed these specific examples above and need not analyze them again.

## <u>CONCLUSION</u>

For the reasons set forth above, Sun will be awarded attorneys' fees in the amount of $2,425,605.39.  That amount reflects Sun's original request for attorneys' fees minus reductions of $19,491.00, $6,613.75, $33,651.25, $7,631.25, and $53,744.06 for work performed in connection with Sun's Motion to Dismiss Third Party Claims, Sun's *Pro Hac Vice* Applications, Sun's Motion to Strike the Jensen Report, Sun's Motion for Bifurcation and Sun and Sheehan's Joint Motion for Summary Judgment under the Spill Act, respectively.  Sun's attorneys' fees also reflect an additional 12.5% reduction after the above reductions based upon B&D's method of billing in .25 increments.  Finally, Sun will be awarded $191,328 in expenses and $314,869 for fees relating to its expert charges, bringing Sun's total fee award to $2,931,802.39.


                                            _____ s/ Susan D. Wigenton
                                     **Susan D. Wigenton, U.S.D.J.**


cc:  Madeline Cox Arleo, U.S.M.J.